UNITED STATES BANKRUPTCY COURT       FOR PUBLICATION
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------
In re

     NANODYNAMICS, INC.                      Case No. 09-13438 K

                Debtor
-------------------------------------------------------------------
Mark S. Wallach, as Chapter 7 Trustee
of Nanodynamics, Inc.
                Plaintiff

       -vs-                         AP No. 11-1078 K

Allan Rothstein

                Defendant
-------------------------------------------------------------------


John A. Mueller, Esq.
Harter Secrest & Emery LLP
Twelve Fountain Plaza, Suite 400
Buffalo, NY   14202-2293

Attorneys for Plaintiff

Craig T. Lutterbein, Esq., (argued)
Garry M. Graber, Esq. (on the Brief)
Hodgson,Russ
The Guaranty Building, Suite 100
140 Pearl Street
Buffalo, NY   14202-4040

Attorneys for Defendant


DECISION AND ORDER DENYING DISMISSAL MOTION
IN PART AND GRANTING IT IN PART (BUT WITH LEAVE
TO AMEND THE COMPLAINT)


This voluntary Chapter 7 case was filed on July 27, 2009, and this Adversary

Proceeding was filed on July 13, 2011, just within the 11 U.S.C. § 546 statute of limitations.

The present Motion to Dismiss constitutes, among other things, a *Stern v. Marshall* (131 S. Ct. 2594 (2011)) attack on the Trustee's fraudulent transfer causes of action, and an *Iqbal* (556 U.S. 662 (2009)) and *Twombly* (550 U.S. 544 (2007)) attack on the Trustee's preference causes of action.

The Court will first address the *Twombly-Iqbal* argument as to the Trustee's preference causes of action.

The Court will leave to another day its view of the impact of *Twombly* and *Iqbal* upon garden-variety preference or fraudulent transfer actions against a mere lender or trade creditor. This is not a garden-variety case, and the Defendant is not a mere lender or trade creditor.

The Complaint alleges (with pertinent exhibits) that until April 26, 2007, the Defendant was a principal officer, director, and major shareholder of the debtor. He resigned his offices on that date. That was about 26 months before the voluntary Chapter 7 filing by this debtor. (This was never a Chapter 11 case.)

The Complaint alleges that as of May 1, 2007 (just a few days after he resigned as officer and director), the debtor and Defendant agreed that the Defendant would have a three-year consultation agreement by which the Defendant would receive $54,000 per year, an office on Long Island,[1] and expenses and commissions with regard to the Defendant's efforts to find certain

---

[1]That office had been leased by the debtor in 2004. It was to be continued for the Defendant's benefit at the debtor's expense.

business opportunities for the debtor.

The Complaint further alleges (with pertinent exhibits) that approximately $122,500 in consulting fees were paid by the debtor to the Defendant from July 27, 2007 to the petition date. It also alleges (with exhibits) that between November of 2005 (not 2007 when the subject agreement was executed) and the 2009 Chapter 7 filing date, the debtor expended $386,667.32 for the Long Island office.

The Complaint exhibits statements from the debtor's former in-house counsel and from a non-lawyer consultant to the Trustee to the effect that the debtor "conducted no meaningful operations out of the subject leased premises." Rather, the premises were "used primarily for the benefit of [Defendant] and his varied business interests."

It is further alleged that the Defendant failed to perform his responsibilities under the 2007 agreement. The Complaint asks that any and all claims asserted by the Defendant against this Chapter 7 estate "including [his] general unsecured claim for $532,315.07 be disallowed unless the Defendant pays an amount equal to the sum and/or value of the [challenged] transfers."

Viewing the Complaint as a whole, and in light of the fact that the Defendant has filed a Proof of Claim in excess of $500,000 as noted above, the Complaint follows a typical form. The Trustee alleges that if the debtor owed money to the Defendant before payments from the debtor to the Defendant were made during the "look back period," then those payments were voidable preferences if the other elements of § 547 are satisfied; alternatively, the payments were fraudulent transfers if there was no antecedent debt and the debtor received inadequate consideration.

(A Chapter 7 Trustee cannot be a Chapter 7 Trustee if he or she or it has personal knowledge of the pre-petition facts. (See *In re Tremont*, 143 B.R. 989 (1992).) A necessary consequence of that fact is "alternative pleading.")

As among the various regards in which the Defendant challenges the preference causes of action, three are worthy of address. (The rest have been considered by the Court and are overruled for the reasons set forth by the Trustee in his opposition to the present Motion.)

The first of the worthy challenges is the allegation that the Defendant was an "insider" for purposes of 11 U.S.C. § 547. If that has properly been pled, then the statute looks back to what the Defendant received for a full year prior to the Chapter 7 filing, rather than just to the 90 days before the Chapter 7 filing.

The second meaningful *Twomblyy/Iqbal* challenge to the Complaint emerges from the first. When the look back period is only 90 days, the Trustee enjoys a "presumption of insolvency" under 11 U.S.C. § 547. No statutory presumption of insolvency exists as to the period between 90 days before the bankruptcy filing and one year before the bankruptcy filing. Consequently, the Defendant raises the question of whether the Trustee has properly pled insolvency as to transfers made by the debtor to the Defendant during the period from one year before the filing of the bankruptcy petition to 90 days before the filing of the bankruptcy petition.

The third is the question of solvency/insolvency on the day of the Chapter 7 filing.[2]

It seems clear to the Court that the Trustee has sufficiently pled that the Defendant

---

[2] This is raised as to the 11 U.S.C. § 547(b)(5) requirement that the transferees have received more than they would receive in a Chapter 7 distribution.

was an insider <u>at the time that his consulting agreement was negotiated and agreed-to by the</u>

<u>debtor</u>.  Subject to determination at trial, the allegation that the consulting agreement and the

debtor's resignation from any official position of power in the debtor were essentially

contemporaneous passes the *Twombly/Iqbal* "plausibility" standard.  (Trial will determine whether

the Defendant caused the debtor to grant him the 2007 agreement by an exercise of control over

the debtor or whether he bargained for the agreement with others who actually "controlled" the

debtor at that time.)

        What is not clear to the Court is whether the one year look back period applies to

one who accepts the fruits of a contract he caused a debtor to grant him while he was an insider,

but after he ceased to be an officer, director, or person in control.  11 U.S.C. § 547(b)(4)(B)

explicitly requires that a defendant have been an insider "at the time of such transfer" when the

one year look back period is to apply.  An important question of law is presented here, and the

Trustee seeks to moot any such distinction by alleging that the Defendant <u>remained</u> in control of

the debtor despite his resignation.  That does not pass *Iqbal/Twombly* standards.  If the Trustee

has evidence of facts of this Defendant's post-resignation exercise of control of the debtor, rather

than mere surmise, he must plead them to the point of "plausibility."  He will be given an

opportunity to do so in an amended Complaint.

        (This may be a distinction without a difference under applicable law.  To illustrate,

we might consider a very different and extreme hypothetical.  Consider a corporate principal who

causes a debtor to give her a golden umbrella in the form of a $500,000, 30-day promissory note

as she bows out of liability as an officer or director.  The debtor pays the note when due rather

than being sued for default. If the payment was made more than 90 days before the Chapter 7

filing (but less than a year before), is she immune from preference attack? If she is not immune

under the weight of case authority, then it might make no difference whether the Defendant here

remained in control or not. See, e.g. *In re EECO Inc.,* 138 B.R. 260 (Bkrtcy. C.D. Cal. 1992).

(Such an extreme hypothetical is not presented here, has not been briefed here, and the Court

expresses no opinion upon it.))

   Another worthy argument raised by the defendant is as to "insolvency" on the day

the Chapter 7 petition was filed. The Court has no difficulty agreeing with the Trustee that *Iqbal*

*and Twombly* do not require a Chapter 7 Trustee to plead why, in fact, filing a Chapter 7 case was

a mistake *ab initio*. This is to ask why, in fact, would a substantial business file a Chapter 7 case

if assets were available to pay all liabilities in full? Such is not unheard-of, but this Chapter 7

Trustee cannot know whether performance of his statutory charge under 11 U.S.C. § 704 will

result in full payment to creditors until avoidance actions such as this action under Chapter 5 of

the Bankruptcy Code are completed, or until overwhelming assets fall into the lap of the Trustee

(by litigation or otherwise), and until all claims have been filed and objections thereto have been

resolved.

   Although the schedules filed by this debtor with the voluntary Chapter 7 petition

asserted assets of over $40 million versus liabilities of approximately $12 million on the date of

the petition, the asset schedules are problematic. For example, $25 million worth of "Deferred

Income Taxes" are claimed as assets on line 18 of the Personal Property Schedule. The Court is

unclear as to what this means. Perhaps it means corporate tax attributes. Those could have value

to a purchaser of the corporate stock, but only stock owned by the debtor itself could be sold by

the Trustee.  Furthermore, unpaid corporate debt would continue to encumber the corporation in

the hands of an acquirer given that a corporation receives no discharge in a Chapter 7 case.

Consequently, it remains to be seen whether that $15 million is actually an "asset."  Also claimed

as an asset is $10 million owed to the debtor by its affiliated Chapter 7 debtor, Nanodynamics

Energy, Inc. ("Energy").  Energy's Chapter 7 case closed a year ago with a 7.1% distribution to

creditors.  Only $471,977.34 was paid to the current debtor upon what it claimed was a

$10,000,000 "asset."  For *Twombly/Iqbal* purposes, this Trustee cannot sensibly be charged with

taking the Schedules at face value.  He will not know the true state of affairs until he completes

his charge under 11 U.S.C. § 704.  Also,  he often cannot know from the Schedules whether and

how the debtor might have been solvent at some point during the look back period.[3]

As a general matter, this Court is of the belief that *Twombly* and *Iqbal* cannot be

viewed in such a way as to require a Chapter 7 trustee to plead facts that are outside his (or her or

its) knowledge, outside the scope of his Rule 11 obligation as to any given avoidance action

(again, see *In re Tremont;* 148 B.R. 989), and to establish that a voluntary Chapter 7 debtor

actually was <u>not</u> solvent on the petition date.  Rather, this Court finds that a voluntary Chapter 7

petition establishes *vel non*, the "plausibility" of a trustee's allegations of insolvency as of that

date.[4]  Otherwise, trustees will have far less than the two years provided by 11 U.S.C. § 546 to

---

[3]Even forensic accounting in this regard has its limits.  Discovery in this case from this Defendant might have great value to both sides.

[4]After over 20 years on the Bench, this writer recalls only one case here in which a <u>business</u> debtor intentionally filed a Chapter 7 petition, <u>knowing</u> that it was solvent.  It was a small construction company that

determine whether Chapter 5 avoidance actions exist. A trustee would have to expend estate

money (money that an estate might not have) long before the 2-year deadline in order to conduct

substantial discovery before filing the Complaint. (The experience[5] of this Court is that preference

actions are almost always settled or withdrawn after a trustee reads a defendant's Answer and

Affirmative Defenses, and sees a little documentation. Formal discovery is rarely required. Thus,

pre-pleading discovery under Rule 7027 or Rule 2004 would usually be a waste of estate assets.)


If the Chapter 7 schedules or other circumstances genuinely[6] are such as to put a

trustee on notice that he or she or it is pursuing an avoidance action as to a Chapter 7 debtor who

was solvent at the time of the challenged transfer or was solvent as of the date of the petition,

then there are principles beyond those established by *Twombly* and *Iqbal* that would militate a

---

accompanied its bankruptcy filing with a press release that the principal was retiring, everyone would be paid in full (with interest), and Chapter 7 was the most efficient, orderly way to accomplish that without taxing the health of the principal. Indeed, that objective was attained.

There is a category of business cases in which principals hope that their Chapter 7 debtor eventually turns out to have been solvent, but do not have enough at stake to keep the debtor "alive," as opposed to them letting the chips fall where they may. Such was the case of *In re Quid Me Broadcasting, Inc.,* 89-12649K, a radio station whose owners were various medical and other professionals. They sold the station on an installment basis to another entity. When installments were missed, the owners filed the station under Chapter 7. As it turned out, the buyer made good on the loan; it was eventually paid in full to that Chapter 7 Trustee; and those who had disgorged preferences and fraudulent transfers were recompensed.

In consumer cases, it is not uncommon for a debtor to be possessed of a claim (usually a personal injury cause of action) of uncertain value. Sometimes the claim turns out to have been of great value, resulting in surplus monies. In such cases, of course, even those who disgorged preferences or fraudulent transfers are fully recompensed by the bankruptcy estate. Consequently, one would find no published decisions regarding the question of whether a Chapter 7 debtor was solvent or insolvent on the date of the petition (when the value of the cause of action was unknown) for § 547 or § 548 purposes. The eventual distribution moots the question.

[5]*Twombly* and *Iqbal* call upon a court to use its "experience."

[6]The obscure (if not obtuse) Schedules here are to be ignored, as discussed above.

dismissal of an avoidance action in a bankruptcy case.  (E.g., *Chambers v. Nasco*, 501 U.S. 32 (1991), Rule 37 and Rule 11.)  Such is not yet asserted to be the case here .

The last worthy *Iqbal/Twombly* attack on the Trustee's Complaint as to the preference causes of action applies only if the Defendant is eventually found to be an "insider" as to particular transfers to him during the period from one year before the petition date and 90 days before the filing.  That is the question of solvency/insolvency at the time of each particular transfer.  The Complaint alleges a corporate resolution to the effect that the purpose of the May 1, 2007 agreement between the debtor and the Defendant was to enable the Defendant to "raise desperately needed capital."  But that is not what the resolution says.  It says that the Defendant was to assist as to matters "such as joint ventures, mergers and acquisitions."

It is true that the Resolution talks about a "proposed public offering," but IPOs do not always bespeak a "desperate need for capital."  Often, obviously, an IPO bespeaks a <u>capital-rich</u> <u>corporation</u> whose existing shareholders seek to become **rich** shareholders.

Because it is not clear to the Court whether the contemplated efforts by the Defendant appertained to future solvency itself, or just to future growth and profitability, this Court finds that the Complaint does not survive the *Twombly/Iqbal* "plausibility" standard in this case.  The Trustee must re-plead this element as well.

Now the Court proceeds to the Defendant's *Stern v. Marshall* arguments for dismissal of the fraudulent transfer causes of action.

First (and most importantly), this Court will obey the February 29, 2012 Order of the District Court for this District (which this writer views to be an amendment or supplement to

the Standing Order of Reference entered by the District Court on July 13, 1984).  Somehow lost

in the aftermath of the *Stern v. Marshall* case is the fact that the dissent in that case emphasized

that 28 U.S.C. § 1334 vests all jurisdiction over every aspect of bankruptcy cases in the district

court, not the bankruptcy court.  28 U.S.C. § 157 permits (but does not require) district courts to

refer bankruptcy case matters, and proceedings to the bankruptcy courts for certain purposes.

Every district court in the nation has entered a General Order of Reference pursuant to 28 U.S.C.

§ 157.[7]  Until *Stern v. Marshall,* it had been supposed that Congress' careful delineation between

core and non-core proceedings in 1984, contained in 28 U.S.C. § 157, was consistent with the

Supreme Court's decision in the *Northern Pipeline case* <u>except as to Seventh Amendment

concerns</u>. (See *Granfinanciera*, *S. A. v. Nordberg*, 492 U.S. 33.)  *Stern v. Marshall* teaches

otherwise.  Consequently, the February 29, 2012 Order of the District Court for this District

pulled back to the District Court some of what this District Court's own Order referred to this

Bankruptcy Court in 1984.  (For purposes of the present case, the District Court has done so at a

propitious time, given that this Court has not entered judgment upon anything involved in regards

to the fraudulent transfer aspects of this Adversary Proceeding.)

Again, this Court will obey the District Court's Order of February 29, 2012.[8]

---

[7]There was a time during the 1990s when the District Court for the District of Delaware withdrew the General
Order of Reference, but it was subsequently reinstated.

[8]To the effect that that procedure established by the new Standing Order is totally consistent with *Stern v.
Marshall*, see *In re Heller Ehrman LLP*, 2011 WL 6179149, at *6 (N.D. Cal. Dec. 13, 2011); *In re Refco Inc.*, 2011
WL 5974532, at *10; 461 B.R. 181 (Bankr. S.D.N.Y.; *In re Coudert Bros. LLP*, WL 5593147, at *13. (District Court,
S.D.N.Y. Sept. 22, 2011).  The Defendant's attack upon the constitutionality of the <u>February 29, 2012 Order</u> is rejected
not only upon the cited bases, but because it borders on frivolous.  The Defendant's argument is that because Congress
<u>thought</u> it got the Article III matter "right" in the core/non-core articulation in 28 U.S.C. § 157, but got it wrong as
to *Stern v. Marshall*-type disputes, there can be no constitutional basis upon which the District Court may simply

Secondly, the two year statute of limitations contained in 11 U.S.C. § 546 for the commencement of fraudulent transfer actions has run in this bankruptcy case. Even if this Court agreed that it could not hear "and determine" the fraudulent transfer causes of action, it would not dismiss them, but rather would send them to the Article III Court.[9]

Thirdly (and least importantly), this Court believes that the Defendant reads the case of *Stern v. Marshall* far too broadly. The Defendant argues at paragraph 14 of his Motion that because fraudulent transfer actions derive from common law, "it is preposterous to suggest that Congress has the talismanic power to change the nature of an action that has existed for more than 200 years before our Constitution was ratified from something other than a common law cause of action."

In other words, the defendant challenges the constitutionality of 28 U.S.C. § 157(b)(2)(H). Of course, the Defendant does not do so in explicit terms. That would require notice to the Department of Justice, etc. Rather, the Defendant asks the present court to extrapolate from the *Stern v. Marshall* holding and reach a result in his favor that finesses the

---

conclude that what was thought to be "core" is "non-core" and make suitable provision for the exercise of its Article III jurisdiction under 28 U.S.C. § 1334. (It is only "borderline" frivolous because it could be malpractice to fail to preserve the argument. Perhaps the argument will prevail in some higher court somewhere, sometime, in time to assist this Defendant.)

[9]This Court does not know the aftermath of the Supreme Court's decision in *Stern v. Marshall*. Perhaps Trustee Stern still had time to pursue the bankruptcy estate's counterclaim against Mr. Marshall by filing a new action in state court or an Article III court. The Trustee has no such option here. Perhaps the Defendant here will point out that there is no statutory mechanism for this Court to "send" this matter to the District Court if the February 29, 2012 Order is not infirm, but that would ignore the fact that for the 31 years that this writer has been either an employee or officer of the court (nearly 21 years as a "judicial officer" of the District Court (28 U.S.C. § 151)), a *sua sponte* withdrawal of the reference (28 U.S.C. § 157(d)) would result if a bankruptcy judge of this District suggests it to the present or past Chief District Judge, or a District Court Judge previously assigned to the bankruptcy case. This is a great credit to the past and present District Court Judges, and the leadership of the past and present Chiefs. Such collegiality well-serves the people of this District.

need for a direct Constitutional attack upon that statute.

This Court declines that invitation. The counterclaim that Trustee Stern asserted

against Mr. Marshall was supported only by 11 U.S.C. § 541. It was a claim for tortious

interference. It was a cause of action belonging to the creditors of Vicki Lynn Marshall only

because she was possessed of the right to pursue that cause of action at the time that she filed her

bankruptcy petition.[10] As of today (in this Court's view), the High Court's decision stands only

for the proposition that 28 U.S.C. § 157 (b)(2)(c) sweeps too broadly in its presumption that any

and all "counterclaims" arising from the breadth of 11 U.S.C. § 541 are properly within the "core"

jurisdiction of a bankruptcy court.

(In fairness, the Defendant's argument in reliance on *Granfinanciera* in seeking

expansion of *Stern v. Marshall* is well-framed. Even the Dissenters in that case were frustrated

by the Court's failure to be clear as to what, if anything, the Court was saying about the

constitutionality of 28 U.S.C. § 157(b)(2)(H) under Article III, as opposed to the Seventh

Amendment. But the High Court was explicit and adamant that only the right to jury trial was

decided. The present Court has no doubt that if and when an Article III attack is properly

launched against (b)(2)(H),[11] the arguments for each side have already been written - - the

Decision of the Court, and the Dissents, in *Granfinanciera*.)

---

[10]Preference and fraudulent transfer actions on the other hand, are very much part of the broad statutory scheme enacted under the Bankruptcy Clause (in this Court's view), at least where, as here, the creditor has filed a proof of claim in an amount in excess of the challenged transfers. (See both *Granfinanciera* and *Stern*.)

[11]Only fraudulent transfer cases are at issue. Preferences did not exist at common law.

CONCLUSION

The Defendant has raised other bases for his Motion to Dismiss.  The Court has

considered them and finds them to be without merit for the reasons argued by the Trustee.   The

Trustee shall have until August 24, 2012 to amend his complaint as to his claim that the

Defendant remained an "insider" after May 1, 2007 (if that is necessary (see *In re ECCO, Inc.,*

above)), and as to his allegation of insolvency during the period from one year before the petition

date and 90 days before the petition date.

This matter is restored to the Calendar Call on September 19, 2012 at 11:30 a.m.

for further scheduling.

SO ORDERED.

Dated:        Buffalo, New York
              July 16, 2012

                                        s/Michael J. Kaplan

                                        _____
                                                     U.S.B.J.